850 So.2d 717 (2003)
INTERNATIONAL PAPER COMPANY
v.
EAST FELICIANA PARISH SCHOOL BOARD, State of Louisiana, Attorney General.
No. 2002 CA 0648.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
*718 Jesse R. Adams, III, Andre B. Burvant, New Orleans, Counsel for Appellant International Paper Co.
Robert R. Rainer, Frederick Mulhearn, Baton Rouge, Counsel for Appellee East Feliciana School Board.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
KLINE, J.
This is an appeal taken by International Paper Company (IP) from a summary judgment rendered in favor of East Feliciana Parish School Board (School Board) allowing it to levy and collect sales tax on parts and labor used in repairing IP's equipment in East Feliciana Parish. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Between January 1, 1994 and December 31, 1996, IP owned and operated a paper mill located in Mobile, Alabama. During that period, IP sent equipment used at its Mobile mill to be repaired at Woodyard Equipment and Supply Company, Inc. (WYESCO), located in East Feliciana Parish. According to IP, these repairs generally required the installation of new parts. After WYESCO completed the repairs, it returned IP's equipment to the Mobile mill on WYESCO trucks. For billing purposes, IP specifically requested that WYESCO separately designate the cost for labor and the cost for parts on its invoices.
Subsequently, the School Board conducted a tax audit of IP for the period of January 1994 through December 1996. The audit revealed that IP had not paid taxes in East Feliciana Parish for the repairs performed by WYESCO. Consequently, the School Board issued an assessment to IP on December 30, 1997, seeking collection of taxes in the amount of $15,421.64, penalties in the amount of $3,855.41, and interest in the amount of $4,217.76, for a total of $23,494.81. In its *719 assessment, the School Board levied sales tax on the full cost of the repairs, including labor and the cost of the parts used in making the repairs.
On March 2, 1998, IP paid the assessment under protest and soon after filed suit for recovery of the amount paid. While IP subsequently admitted that the labor used in making the repairs was taxable in East Feliciana Parish, it disputed that the parts used in making the repairs were also taxable in the parish. Rather, IP contended that the repair parts constituted tangible personal property delivered outside the parish and, as such, was exempt from East Feliciana sales tax.
On September 10, 2001, IP filed a motion for partial summary judgment arguing that the School Board "lack[ed] authority to impose and collect sales taxes on the materials used in the repairs because WYESCO delivered the materials that it sold to IP at its mill in Mobile, Alabama." Subsequently, on October 1, 2001, the School Board filed a cross motion for partial summary judgment contending entitlement to levy and collect a sales tax on the materials used in the repairs. A hearing on the motions was conducted on November 26, 2001. At its conclusion, the trial court stated:
[T]he East Feliciana Parish School Board, the collector of taxes here in East Feliciana Parish, conducted a tax audit for the years 1994, 1995 and 1996. And [sic] pursuant to that audit determined that International Paper had not paid taxes on labor and parts related to repairs of International Paper's equipment which occurred here in East Feliciana Parish during the audit period[.] International Paper owned and operated a mill located in Mobile, Alabama that sent pieces of equipment to the Woodyard Equipment and Supply Company, which is located here in East Feliciana Parish for repair. These repairs generally required installation of new parts into International Paper's equipment. After these parts were installed and otherwise repaired, the Woodyard Equipment and Supply Company delivered the equipment on Woodyard's trucks to International Paper in Mobile, Alabama. So, those are the facts, and as is said earlier, it does not appear that there is any contest as to any of these material facts.
The issue before the Court and the basis of International Paper's motion is that they are protesting the assessment because there are allegations that the School Board lacks authority to collect sales taxes on the materials used in the repairs because of the fact that Woodyard delivered the materials that sold [sic] to International Paper at its mill in Mobile, Alabama. Again, that is the issue as to whether or not these materials that were used in the repairs are taxable here in East Feliciana Parish or elsewhere.
The East Feliciana Parish School Board ordinance which purportedly creates the authority for the School Board to levy this tax is found in Section 1.301(14) that defines the sale of services. It says "Furnishing of repairs to tangible personal property, including but not restricted to the repair and servicing of automobiles and other vehicles, electrical and mechanical appliances and equipment, watches, jewelry, refrigerators, radios, shoes and office appliances and equipment." So that's the basis upon which this tax is levied and the issue is whether or not that includes materials. That is whether or not there is, in fact, a sale of materials. So the actual labor, as I said earlier, is not an issue. Both parties appear to agree that labor certainly is taxable. So, again, the issue is *720 the material, the parts used in making the repairs.
It appears to me that these two items, labor and materials or parts, go hand in hand. I do not think that they're divisible. It's my opinion that International Paper sent their equipment over here for repairs, not for the purchase of individual parts. And looking at the Parish of Jefferson versus Ecko-Glaco, which is found at 280 So.2d 629, a Fourth Circuit decision of 1973, and looking at the second case, which I feel is dispositive of the issue before the Court, Clyde Juneau Co. versus Caddo-Shreveport Sales and Use Tax Commission found at 677 So.2d 610, Second Circuit, 1996, buttresses my opinion that the labor/services and parts/ materials go hand in hand. I just don't feel from the facts of this case and those cases that those things can or should be bifurcated or divided.
The language from the Clyde Juneau case says that the parts are of no use to a customer without the service provided by a contractor and the service provided cannot be completed without the parts. So, again, this just reinforces my belief that these two things are not divisible.
Thus, the trial court denied IP's motion and granted the motion of the School Board. A judgment was signed accordingly on December 11, 2001. From this judgment, IP appeals asserting the following three assignments of error:
1) The District Court erred by ruling that the East Feliciana Parish School Board can impose sales tax on tangible personal property delivered outside the territorial limits of East Feliciana Parish.
2) The District Court erred in concluding that the separately itemized labor and materials aspect of a repair could not be treated separately for sales tax purposes.
3) The District Court erred by failing to recognize that any ambiguity in the relevant statutes as they apply to the transactions at issue in this case must be interpreted liberally in favor of the taxpayer, International Paper.
As an appellate court we review a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The motion is to be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Perry v. City of Bogalusa, 00-2281 (La.App. 1 Cir. 12/28/01), 804 So.2d 895, 899. In the present case, the facts are undisputed, thus we need only make a determination as to who is entitled to judgment as a matter of law.
Assignments of Error 1 and 2
According to the record before us, Section 2.302C of the East Feliciana School Board Ordinances imposes a tax on "the sale of services, as defined herein," and Section 1.301(14) defines "sale of services" in part as:
The furnishing of repairs to tangible personal property, including but not restricted to the repair and servicing of automobiles and other vehicles, electrical and mechanical appliances and equipment, watches, jewelry, refrigerators, radios, shoes, and office appliances and equipment.
This language is identical to that contained in La. R.S. 47:301(14) defining "sales of *721 services."[2] On the basis of this definition the School Board assessed a sales tax for the total cost of the repair work that WYESCO performed for IP in the parish.
However, IP argues that the invoices used in billing the repair services distinguished the labor component from the parts component. IP urges that, when the repair transaction is bifurcated in such a manner, different tax consequences can apply to each component. While it concedes that the School Board can tax the labor portion, it contends that it cannot tax the separately itemized parts used in the repairs because they constituted a sale of personal tangible property delivered outside the parish. In support of its contention IP cites both East Feliciana Parish Code Section 15-38(c) and La. R.S. 33:2716(A) which provide that no tax shall be due on the sale of any goods or personal tangible property delivered outside the territorial limits of the parish.
We respectfully disagree with IP's contention. Initially, we note that it is the substance of the transaction, not the form, that is controlling for the determination of tax liability for sales or use tax purposes. United Companies Printing Company v. City of Baton Rouge, 569 So.2d 186, 189 (La.App. 1 Cir.1990), writ denied, 572 So.2d 73 (La.1991). The substance of a contract, not the wording of it, nor the splitting or dividing it up by the contracting parties, is determinative. The taxpayer cannot defeat the collection of taxes by either the wording, form, or label of a contract. McNamara v. Electrode Corporation, 418 So.2d 652, 662 (La.App. 1 Cir.), writ denied, 420 So.2d 986 (La.1982). Thus, something is either taxable or not regardless of the type of invoicing methods utilized. See Clyde Juneau Company, Inc. v. Caddo-Shreveport Sales and Use Tax Commission, 28,433, p. 5 (La.App. 2 Cir. 6/26/96), 677 So.2d 610, 612. Accordingly, the fact that the parts and labor were separately itemized on the invoices is of no consequence.
The School Board contends that the true object of the transaction at issue was not the purchase of parts alone, nor was it the purchase of labor alone. Rather, the School Board maintains that what IP purchased was the repair of its equipment and that both the labor and parts were integral to and inseparable from the rendering of the requested repairs. We agree.
The term "repairs" must be given its generally prevailing meaning and be construed according to common usage. La C.C. art. 11; La.R.S. 1:3, South Central Bell Telephone Company v. Barthelemy, 94-0499, p. 20 (La.10/17/94), 643 So.2d 1240, 1250. Merriam-Webster's Collegiate Dictionary 991 (10th ed.1995) defines "repair" as, "to restore by replacing a part or putting together what is torn or broken." The jurisprudence has similarly defined it as, to fix anything that is broken. South Central Bell Telephone Company v. Barthelemy, 94-0499 at p. 20, 643 So.2d at 1250. IP sent its paper-making equipment to WYESCO to be repaired. In order to fix or restore the equipment, WYESCO necessarily had to replace broken parts with new parts. The equipment could not have been repaired without them, and therefore the furnishing of new parts was incidental to and a part of the repair contract. See Thompson Chevrolet Company v. Blanchard, 15 La.App. 254, 131 So. 630, 631 (2 Cir.1930). Consequently, WYESCO was not selling parts to IP, but was consuming *722 them in making the requested repairs. See Clyde Juneau Company, Inc. v. Caddo-Shreveport Sales and Use Tax Commission, 28,433 at p. 6, 677 So.2d at 613.
Hence, it is abundantly clear that what IP purchased was repairs to its equipment, and it is each repair transaction, necessarily comprised of both labor and parts, that is the subject of the tax.
Even assuming arguendo that there was a separate and distinct sale of tangible personal property (repair parts) in addition to a sale of repair services (labor), rather than just a single sale of repair services (including both parts and labor), IP's argument that the parts are exempt from sales tax in East Feliciana because they were delivered outside the parish must still fall. Under East Feliciana Parish Ordinance Section 15-31 the term "sale" is to be given the meaning ascribed to it in La. R.S. 47:301. Louisiana Revised Statute 47:301(12) defines "sale" as "any transfer of title or possession... of tangible personal property, for a consideration...." (Emphasis added.)
Ordinarily, tax laws are sui generis. South Central Bell Telephone Co. v. Barthelemy, 94-0499 at p. 6, 643 So.2d at 1243. However, the courts have applied property law in tax contexts. City of New Orleans v. Baumer Foods, Inc., 532 So.2d 1381, 1383 (La.1988). In Exxon Corporation v. Traigle, 353 So.2d 314, 316-317 (La.App. 1 Cir.1977), writ denied, 354 So.2d 1385 (La.1978), this court held that "tangible personal property" as it is used in the state sales tax law is synonymous with "corporeal movable property" as used in the Civil Code. In our reasoning, we stated:
In its use of this common law term ["tangible personal property"] we do not believe the legislature intended to import the common law into Louisiana for the purpose of sales tax law or to require the court to develop a new body of property law for the purpose of the sales tax. We find it more likely that the legislature desired that this undefined term be defined in accordance with the general property law of Louisiana. Other states use their general property law to explain their sales tax law. Therefore we find it only natural to assume that despite using common law terminology, the legislature intended that Louisiana property law be applied to give explanation to Louisiana tax law. (Citation omitted.)
Louisiana Civil Code article 461 defines corporeals as "things that have a body, whether animate or inanimate, and can be felt or touched." Louisiana Civil Code article 471 further defines corporeal movables as "things, whether animate or inanimate, that normally move or can be moved from one place to another." Under these definitions, the repair parts are clearly "corporeal movables" and thus qualify as "tangible personal property" under the relevant ordinance and statute. However, the analysis cannot end there, because La. C.C. art. 482 states that "the ownership of a thing includes by accession the ownership of everything that it produces or is untied with it either naturally or artificially." More specifically, La. C.C. art. 510 provides, in pertinent part, that "[w]hen two corporeal movables are united to form a whole, and one of them is an accessory of the other, the whole belongs to the owner of the principal thing." Accordingly, title to the repair parts (accessories) passed to IP when they were united to or incorporated in the equipment (principal thing) during the repair services wholly performed in East Feliciana Parish. See Roberts v. Williams, 99 So.2d 392, 394 (La.App. 2 Cir.1957).
*723 Although we are unable to find any tax law cases applying the article on accession as it relates to corporeal movables, we are convinced that such an application is appropriate. We are buttressed in our opinion by several cases applying other germane property law articles to various tax law issues. See Exxon Corporation v. Traigle, 353 So.2d 314, 317 (La.App. 1 Cir.1977), (court determined the applicability of state sales and services tax by classifying the property at issue under general property law) writ denied, 354 So.2d 1385 (La.1978); Showboat Star Partnership v. Slaughter, 00-1227 (La.4/3/01), 789 So.2d 554 (applying La. C.C. art. 466 to determine whether gaming equipment on a riverboat gaming vessel qualified as "component parts" under La. R.S. 47:305.1 A for sales tax exemption purposes); Clyde Juneau Company, Inc. v. Caddo-Shreveport Sales and Use Tax Commission, 28,433 (La.App. 2 Cir. 6/26/96), 677 So.2d 610 (applying La. C.C. art. 466 to determine that corporeal movable repair parts became component parts of an immovable and thus, were exempt from sales taxes); City of New Orleans v. Baumer Foods, Inc., 532 So.2d 1381 (La.1988) (applying La. C.C. art. 467 to determine that corporeal movable equipment had not become immovable by declaration when use tax attached and thus the tax was correctly levied); Sales Tax Collector, St. Charles Parish v. Westside Sand Company, Inc., 534 So.2d 454 (La.App. 5 Cir.1988) (applying La. C.C. art. 468 on deimmobilization to determine that once removed from its natural source, sand becomes a corporeal movable and thus subject to sales tax) writ denied, 536 So.2d 1240 (La.1989).
As a consequence, the repair parts, as well as the labor, are subject to taxes in East Feliciana Parish.
Assignment of Error 3
With regard to its third assignment of error, we agree with IP that tax statutes are to be interpreted liberally in favor of the taxpayer. Clyde Juneau Company, Inc. v. Caddo-Shreveport Sales and Use Tax Commission, 28,433 at p. 6, 677 So.2d at 613. If the statute can reasonably be interpreted more than one way, the interpretation less onerous to the taxpayer is to be adopted. Id. However, as set out hereinabove, whether applying the general rules for statutory interpretation or applying the property provisions provided by our Civil Code, IP is inescapably bound to pay the taxes for its purchase of repair services, including the cost of the parts used or consumed by WYESCO in providing those services. Consequently, IP's last assignment of error cannot prevail.

DECREE
For the foregoing reasons, the summary judgment granted in favor of the East Feliciana Parish School Board is affirmed. Costs of this appeal are taxed to International Paper Company.
AFFIRMED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The East Feliciana Parish Code imposes a tax on "the sale of services" in Section 15-32(5) as it is defined in La. R.S. 47:301.